United States District Court
Middle District of Pennsylvania

| | |
|---|---|
| Paul Peraza,<br>    Plaintiff | X<br>X<br>X |
| - v - | X |
| Thomas R. Cain, (I/O capacities) | X |
| | X  Plaintiffs |
| Harrell Watts, (I/O Capacities) | X  First |
| | X  Ammended |
| J. L. Norwood, (I/O Capacities) | X  Complaint |
| | X |
| Warden, USP Canaan, (Name unknown<br>to me at this time), (I/O capacities) | X  Civil Action No.<br>X  3:12-cv-376 |
| | X |
| Captain, USP Canaan, (Name unknown<br>to me at this time), (I/O capacities) | X |
| | X |
| | X |
| Lieutenant Burning, (I/O capacities) | X |
| | X |
| Lieutenant Sudul, (I/O Capacities) | X |
| | X |
| Lieutenant (1), White Male,<br>(Name unknown to me at this<br>time), I/O capacities) | X<br>X<br>X |
| | X |

FILED
SCRANTON

MAR 0 6 2012

Per_____
DEPUTY CLERK

(1)

Lieutenant (2), White Male, (Name unknown to me at this time) (I/O capacities)

Unit Manager, Lynsey, (I/O capacities)

Case Manager, Bigart, (I/O capacities)

Diciplin Hearing Officer, Renda, (I/O capacities)

PA, Kaiser, (I/O capacities)

Psychology Representive, White Male, (Name unknown to me at this time), (I/O capacities)

Escort Officer (1), White Male, (Name unknown to me at this time), (I/O capacities)

Escort Officer (2), White Male, (Name unknown to me at this time), (I/O capacities)

Officer Dominick, (I/O capacities)

Officer Burns, (I/O capacities)

Officer Schwartz, (I/O capacities)

Officer Moran, (I/O capacities)

Officer Seana, (I/O Capacities)

Officer Jenkens, (I/O capacities)

Officer Pelacano, (I/O capacities),

                    Defendants

First Ammended Civil Rights Complaint

Paul Peraza, plaintiff herein pro se, offers his complaint in this matter and alleges as follows:

A. Nature of Action
  1. This is a Civil Rights action against Federal officers and employees relative to their conduct that resulted in ~~plaintiff being assaulted and seriously injured by staff~~ and inmates at the United States Penitentiary, Canaan in Way mart, Pennsylvainia, and there after being subjected to dangerouse life threatining situations, unconstitutional and unnessary harsh prison conditions,

false reports, and cover-ups, by defendants. Said situations are even now a current and **ongoing** danger to plaintiff. This matter also relates to the deprivation of plaintiffs right to seek a redress of grevances, and be secure in his person by Federal officers and employees.

B. Parties

2. Plaintiff, Paul Peraza, was a federal prisoner at the United States Penitentiary Canaan at Way Mart, Pennsylvainia at all times relevant to this complaint.

3. Defendant, Thomas R. Cain, ("Defendant Cain"), was the Director of the Federal **Bureau of Prisons** at all times relevant to this complaint. Defendant Cain is sued in his individual and official capacities.

4. Defendant, Harrell Watts, ("Defendant Watts"), was the General Counsel, and National Appeals Administrator at all times relevant to this complaint. Defendant Watts is sued in his individual and official capacities.

5. Defendant, J.L. Norwood, ("Defendant Norwood") was the Regional Director of the Northeast Region of the Federal Bureau of Prisons at all times relevant to this complaint. Defendant Norwood is sued in his individual and Official capacities.

6. Defendant, Warden, USP Canaan, (Name unknown to me at this time), ("Defendant Warden"), was the warden at all times relevant to this complaint. Defendant Warden is sued in his individual and official capacities.

7. Defendant, Captain, USP Canaan, (Name unknown to me at this time), ("Defendant Captain"), was the Captain at USP Canaan at all times relevant to this complaint. Defendant Captain is sued in his individual and Official capacities.

8. Defendant, Lieutenant, Burning, ("Defendant Burning"), was a Lieutenant at USP Canaan at all times relevant to this complaint. Defendant Burning is sued in his individual and Official capacities.

9. Defendant, Lieutenant, Sudul, ("Defendant Sudul"), was a Lieutenant at USP Canaan at all times relevant to this complaint.

Defendant Sudul is sued in his individual and official capacities.

10. Defendant, Lieutenant (1), White Male, (Name unknown to me at this time), ("Defendant Lieutenant (1)"), was a Lieutenant at all times reletive to this complaint. Defendant Lieutenant (1) is sued in his individual and official capacities.

11. Defendant, Lieutenant (2), White Male, (Name unknown to me at this time), ("Defendant Lieutenant (2)") was a Lieutenant at USP Canaan at all times relevant to this complaint. Defendant Lieutenant (2) is sued in his individual and Official capacities.

12. Defendant, Unit Manager, Lynsey, ("Defendant Lynsey"), was a Unit Manager at USP Canaan at all times relevant to this complaint. Defendant Lynsey is sued in his individual and Official capacities.

13. Defendant, Case Manager, Bigart, ("Defendant Bigart") was a Case Manager at USP Canaan at all times relevant to this complaint. Defendant Bigart is sued in her

individual and Official capacities.

14. Defendant, Discipline Hearing Officer, Renda, ("Defendant Renda"), Was a Discipline Hearing Officer at USP Canaan at all times relevant to this complaint. Defendant Renda is sued in his individual and Official capacities.

15. Defendant, PA, Kaiser, ("Defendant Kaiser") was a medical PA at USP Canaan at all times relevant to this complaint. Defendant Kaiser is sued in his individual and official capacities.

16. Defendant, Psychology Representitave, ("Defendant Psychology Representitave"), ~~was~~ (Name unknown to me at this time) was a Psychology Representitive at USP Canaan at all times relevant to this complaint. Defendant Psychology Representitive is sued in his individual and Official Capacities.

17. Defendant, Escort Officer (1), White Male, (Name unknown to me at this time), ("Defendant Escort Officer (1)") was a Officer at all times relevant to this

complaint. Defendant Escort Officer (1) is sued in his individual and official capacities.

18. Defendant, Escort Officer (2), White Male, (Name unknown to me at this time), ("Defendant Escort Officer (2)") was a officer at all times relevant to this complaint. Defendant Escort Officer (2) is sued in his individual and official capacities.

19. Defendant, Officer, Dominick, ("Defendant Dominick") was a Officer at USP Canaan at all times relevant to this complaint. Defendant Dominick is sued in his individual and official capacities.

20. Defendant, Officer, Burns, ("Defendant Burns"), was a Officer at USP Canaan at all times relevant to this complaint. Defendant Burns is sued in his individual and official capacities.

21. Defendant, Officer, Schwartz, ("Defendant Schwartz"), was a officer at USP Canaan at all times relevant to this

complaint. Defendant Schwartz is sued in his individual and official capacities.

22. Defendant, Officer, Moran, ("Defendant Moran") was a Officer at USP Canaan at all times relevant to this complaint. Defendant Moran is sued in his individual and official capacities.

23. Defendant, Officer, Seana, ("Defendant Seana") was a Officer at USP Canaan at all times relevant to this complaint. Defendant Seana is sued in her individual and official capacities.

24. Defendant, Officer, Jenkens, ("Defendant Jenkens"), was a officer at USP Canaan at all times relevant to this complaint. Defendant Jenkens is sued in his individual and official capacities.

25. Defendant, Officer, Pelacano, ("Defendant Pelacano") was a officer at USP Canaan at all times relevant to this complaint. Defendant Pelacano is sued in his individual and official capacities.

## C. Jurisdiction and Venue

26. Jurisdiction is invoked under 28 U.S.C. Sections 1331, 1343, 1346, and Bivens V. Six Unknown Federal Agents, 403 U.S. 388 (1971).

27. Venue is proper in this judicial district under 28 U.S.C. 1391 (e)(1) and (2) because all of the defendants are officers and /or employees of the United States and/ or agency thereof, one or more of the defendants reside in this district, and a substantial part of the events and/or ommisions giving rise to this lawsuit occured in this district.

## D. Statement of Facts

28. ~~██████████████████~~ plaintiffs cell-mate Mr Burke signed up for outdoor recreation in order to inform staff that he and plaintiff could no longer live togeather.

29. Within approximately 5 minutes Defendant Schwartz brought Mr Burke back to the cell.

30. Defendant Schwartz was accompinied by Defendants; Burning, Dominick, and Moran.

31. Normally only 3 officers are used to move inmates in and out of cells. One for each inmate at the cell door, and one at the electric door controll at the head of the range. This time there were 5.

32. Defendant Schwartz then ordered plaintiff to "Cuff-up" (submit to handcuffs).

33. Assessing the situation with the knowledge of why Mr. Burke left the cell that morning the plaintiff incredulously asked Defendant Schwartz if he was secious.

34. In a louder more aggressive voice Defendant Schwartz once again ordered the plaintiff to "Cuff-up".

35. The plaintiff submitted to being handcuffed behind his back.

36. Mr. Burke was then placed back

into the cell.

37. When the cell door closed the
~~plaintiff~~ ~~have his~~ hand-
cuffs ~~fixed~~.

38. When the handcuffs were removed
the plaintiff looked at Defendant Schwartz
~~and~~ ~~on the side of~~

39. The plaintiff then asked Defendant
Schwartz, "Is this what you need?".

40. Defendant Schwartz then said "Uncuff
Burke".

41. The Plaintiff then asked Defendant
Schwartz if he was kidding.

42. Defendant Schwartzes reply was to
state louder and more aggressivly "Uncuff
Burke".

43. ~~The plaintiff~~ then forced Mr. Burke
onto ~~the lower~~ bunk and struck him 3
or ~~4 times on top~~ of his head.

44. Defendant Schwartz then yelled for the plaintiff to "Cuff up".

45. The plaintiff complied with being hand-cuffed behind his back.

46. When the cell door opened Defendant Schwartz immediatly became verbally abusive. He told the plaintiff that he was a "Pussy" and a "Bitch".

47. The plaintiff did not reply to any of this. The plaintiff could feel the anamosity eminating from Defendants Schwartz, Burning, Dominick, and Moran.

48. Defendant Schwartz then grabbed the plaintiffs hand cuffs, and began leading him down the cell range.

49. When the Plaintiff and Defendant Schwartz, et. al., got to the half-way point of the cell-range Defendant Schwartz yelled very loudly "It's nothing! I ██████████████████ on "Cho-mo violence.!".

50. The plaintiff then yelled loudly, so

that the other inmates in their cells
could hear him, "Fuck you punk". This was
done in order to try and refute the slur.

51. After the plaintiff and Defendant
Schwartz, et.al., left the range they came
to a area of the SHU (special Housing
Unit) that is a known security camera
"Blind spot".

52. When the Plaintiff and Defend-
ant Schwartz reached this "blind spot"
Defendant Schwartz jerked upwards and
back on the plaintiffs hand cuffs, and began
to aggressivly state in a loud voice "stop
resisting" over and over again.

53. Plaintiff did not at all resist. However,
the "stop resisting" command is a common ploy
used by prison guards to justify assaulting
inmates.

54. Defendant Schwartz then pulled the
plaintiffs hand cuffs up sharply, and pushed
the plaintiff forward, ~~throwing him off ball~~
~~off balance and slamming the plaintiff to~~
~~the floor.~~

55. Even after slamming the plaintiff to his knees Defendant Schwartz, now being assisted by Defendants Burning, Dominick, and Moran, continued rushing forward tackling the plaintiff hard enough to slam the pla~~intiff~~ ~~floor.~~ ~~Th~~ ~~plaintiff forehead to the bone~~

56. Defendants Schwartz and Moran then piled on top of the Plaintiff when he landed face-first on the floor.

57. Defendant Moran then proceeded to ~~p~~ ~~the plaintiff~~ his right side approximately ~~~~ while saying "So you're a dirty child molester Hugh? How do you like that "Cho-mo"?".

58. Defendant Schwartz at this time ran his hand over the plaintiffs buttocks while saying "How do you like it when the shoes on the other foot?".

59. Defendant Dominick at this time was twisting the plaintiffs left ankle back and forth well past the ankles normal range of movement, causing extream pain.

60. The plaintiff never resisted, or said anything during this assault, and far more force than nessary was used to purposely harm the plaintiff.

61. Leg irons were placed on the plaintiff, and plaintiff was placed in a holding cell near by.

62. While in the holding cell a officer photographed the plaintiffs head wound.

63. The plaintiff yelled so that the Defendants could hear him "You're not going to get away with this!"

64. Defendant Burning then came to the door and told the plaintiff that Defendant Burning and other "SHU" guards had assaulted another particular inmate numerouse times via "use of force" and that they had never gotten into trouble.

65. Defendant Schwartz then escorted plaintiff to the medical examination room alone.

66. In the medical examination room the plaintiff reported to Defendant Kaiser that the plaintiff had lost conshesness, lost vision in his left eye for approximately 5 minutes, and experienced dizzyness and nausiea. The plaintiff also reported extream pain to his left ankle, and pain in his knees and wrists as well as the 6 cm long gash cut to the bone on his forehead.

67. The plaintiff also reported to Defendant Keiser that the Defendants Schwartz, Dominick, and Moran had done this to plaintiff without being provoked while Defendant Seana wached accompinied by Defendant Burning.

68. The plaintiff then asked Defendant Kaiser if he was going to report the assault.

69. Defendant Kaiser then told the plaintiff that he only does medical assessments, and that the plaintiff should report this to the Captain.

70. The plaintiff was then taken to the main medical area where his ankle was x-rayed, and his fore head bandaged.

71. The plaintiff was then taken to Community Medical Center in Scranton, Pennsylvainia to get his head wound treated, and his ankles and wrists more closely examined.

72. While at Community Medical Center the plaintiff told his attending physician, Kimberly Kross, that the Defendant Officers at USP Canaan had done this to him purposefully and unprovoked while handcuffed behind his back.

73. The statement in paragraph 72 was said in front of Defendants Escort Guard(1), and Escort Guard(2).

74. On or about 5-12-11 plaintiffs cellmate Mr Rodriguez left the "SHU", and went to General Population.

75. Mr Rodriguez was moved back

into the plaintiffs cell in the Special Housing Unit approximately 2 hours later.

76. The plaintiff asked Mr. Rodriguez what had happened.

77. Mr Rodriguez told the plaintiff that inmates out in General Population had forced him into "Protective Custody" (inmate placed in detention for the inmates protection).

78. The plaintiff explained to Mr. Rodriguez that the stigma of living with someone in "protective custody" was too great for the plaintiff to bear at the moment, and that Mr Rodriguez needed to change cells.

79. Mr. Rodriguez said that he understood, and that he would request a cell change.

80. Mr. Rodriguez got the attention of Defendant Pelicano, and informed him that the plaintiff and himself were not compatible, and that he (Mr. Rodriguez) needed to change cells.

81. Defendant Pelacano was resistive to Mr Rodriguez changing cells.

82. After the plaintiffs insistance Defendant Pelicano finally said that he had to check with Defendand Sudul about the cell change.

83. When Defendant Pelacano returned he told the plaintiff and Mr Rodriguez that Defendant Sudul said Mr Rodriguez had to stay in the cell.

84. The plaintiff told Defendant Pelicano that would not work out, but Defendant Pelicano was not receptive to the plaintiffs warnings, nor Mr Rodriguezes pleas.

85. The 

86. Defendant Pelicano then instructed the plaintiff and Mr Rodriguez to "Cuff up".

(20)

87. Mr. Rodriguez and the plaintiff complied.

88. On or about 5-16-11 the plaintiff sent a letter to the prisons Psychology Department, via case manager Smith, detailing the sexual aspect of the assault described in paragraphs 52 to 60 of this filing.

89. On or about 5-17-11 Defendant Psychology Representitive came to see the plaintiff in the Special Housing Unit in response to Plaintiffs letter about the assault described in paragraphs 52 to 60 of this filing.

90. The plaintiff was handcuffed behind his back and taken to the "SHU" Lieutenants office.

91. The Lieutenants office was occupied by Defendants Schwartz, Burning, and Psychology Representitive.

92. Plaintiff was uncomfortable with Defendant Schwartz present, so he

(21)

told Defendant Psychology Representitive that what he had to say was a private matter.

93. Defendant Psychology Representitive then looked to Defendant Burning, then to Defendant Schwartz, then told the plaintiff "This is private".

94. Feeling even more uncomfortable, and now fearing a repeat of the assault described in paragraphs 52-60 of this filing, the plaintiff told Defendant Psychology Representitive that what he had to report was concerning, in part, Defendant Schwartz.

95. When the plaintiff didn't say anything else Defendant Burning instructed Defendant Schwartz to wait in the hall.

96. The plaintiff then reported to Defendant Psychology Representitive the assault on the plaintiff as described in paragraphs 52-60 herein.

97. Defendant Psychology Representitive

then looked to Defendant Burning and said "You were there, is that what happened?"

98. Defendant Burning chuckled and denied the allegations.

99. Defendant Psychology Representitive then told the plaintiff that sexual abuse and staff misconduct in general should be reported to S.I.S. (Special Investigative Services).

100. The plaintiff was then taken back to his cell.

101. On or about 5-22-11 the plaintiff handed a letter to Case Manager Smith detailing the events described in paragraphs 46-60 herein, so that she could deliver it to "SIS".

102. The plaintiff has never recieved a responce from "SIS".

103. One day during the week of 5-23-11 to 5-27-11 the plaintiff and his cell mate Mr. Anderson, went to the outside recreation area.

104. The plaintiff and Mr. Anderson were put in a cage with 2 Mexican gang members one of which is known to the plaintiff as "Smurf".

105. "Smurf" was talking to his fellow gang members in the next cage as Mr. Anderson entered the cage with "Smurf".

106. "Smurf" pulled Mr. Anderson aside and began a animated conversation with him.

107. "Smurf" then approched the plaintiff and told him that Defendant Schwartz, and Defendant Jenkens were telling the Mexican gang members, and other inmates that the plaintiff was a child molester, and he ("Smurf") wanted to know if that was true.

108. The plaintiff explained to "Smurf" that Defendants Jenkens, and Schwartz were lying in retall-yation for the plaintiff reporting the assault described in paragraphs 48-60, and for defying the Defendants in the first place that day.

24

109. "Smurf" said he believed plaintiff and that the Defendants Schwartz, and Jenkens were "Messed up" for saying something like that about the plaintiff (child molester rumor).

110. The plaintiff told "Smurf" that as soon as the plaintiff got his property he would send out his (Plaintiffs) sentencing paperwork.

111. Once the Plaintiff and Mr. Anderson were back in their cell Mr. Anderson asked the plaintiff what "Smurf" had talked to him about.

112. The Plaintiff told Mr. Anderson that "Smurf" had informed him of the child molester rumor that Defendants Jenkens, and Schwartz were spreading about him (plaintiff).

113. Mr. Anderson told the Plaintiff that "Smurf" had informed him of the same thing.

114. On or about 6-7-11 Mr Anderson moved out of the plaintiffs cell and out

to General Population.

115. On or about 6-7-11 Defendant Schwartz moved Mr. Salmoran into plaintiffs cell.

116. Mr. Salmoran looked as if he had been in a fight.

117. After Mr. Salmoran had been placed in the cell plaintiff asked him what had happened to him.

118. Mr. Salmoran told the plaintiff that just that morning he (Mr. Salmoran) had gotten into a fight with his cellmate.

119. Mr. Salmoran told plaintiff someone had informed his cellmate that Mr. Salmoran was in the "SHU" for "Protective Custody" purposes.

120. The plaintiff informed Mr. Salmoran that the plaintiff had enough problems of his own and that the plaintiff didn't need the extra burden of the stigma brought about by living with someone in "protective

custody.

121. Mr. Salmoran understood and agreed that he needed to change cells.

122 Mr. Salmoran got Defendant Schwartzes attention, and explained to Defendant Schwartz that he (Mr Salmoran) had to move.

123. Defendant Schwartz became Belligerant, and told Mr Salmoran "Shut-up, and lay down 'cause you aint moveing".

124. Mr. Salmoran in a furtive state began to plead with Defendant Schwartz stating "You need to move me in with another "check-in" (someone in protective custody)" and "I can't stay here".

125 The more Mr Salmoran pled the more belligerant Defendant Schwartz became. Telling Mr Salmoran that he was not going to be moved, and that he should "Shut-up".

126. The plaintiff then stood and asked Defendant Schwartz if they really needed to go through all this again.

127. Defendant Schwartz sneered at the plaintiff and told him "Just go lay down on youre bunk".

128. ~~The plaintiff then struck Mr. Salmoran on the side of his head.~~

129. Mr Salmoran immediatly dropped to the floor, covered his face, and began to blubber.

130. The plaintiff then asked Defendant Schwartz "Are you happy now?"

131. Defendant once again told the plaintiff to "Go lay down."

132. The plaintiff then struck Mr. Salmoran twice more on top of the head.

133. In a conversational voice Defendant Schwartz told officers waiting out of plaintiffs line of

sight "Their fighting".

134. Defendant Schwartz then looked inside the cell and yelled "Get on the ground! Get on the ground, face down!".

135. Both Mr. Salmoran and the plaintiff complied.

136. Soon the cell door opened and 2 officers put their knees on the plaintiffs back, and handcuffed him behind his back.

137. Three other officers including Defendant Schwartz jumped on Mr. Salmoran, and began yelling over and over "Stop resisting!".

138. Mr. Salmoran was yelling in a plaintive voice "I'm not resisting, I'm not resisting!".

139. The plaintiff looked over and witnessed one of the officers punching Mr. Salmoran with a closed fist.

140. After about 2 or 3 minutes of assaulting Mr. Salmoran the Officers

(29)

and Defendant Schwartz handcuffed and removed Mr Salmoran from the cell.

141. Defendant Schwartz and the officers with him slammed Mr Salmoran into the wall on purpose as they were leaving the cell.

142. The plaintiff was then picked up off the floor, and taken to the Medical examination room.

143. As the plaintiff was being medically assessed by Defendant Kaiser the plaintiff told the Defendant that the "SHU" officers were forcing us inmates to fight in "Gladiator" style cell combat.

144. Defendant Kaiser just shook his head at the plaintiff, and refused to report the incident.

145. Soon after Defendant Schwartz stopped at the Medical examination room door and stated "How does that work? You won't take a "check in" for a Celle, but you'll write me up?"

(30)

146. The plaintiff did not respond.

147. The plaintiff was then taken to the hindicap equipped shower, and left there hand cuffed behind his back for approximately 2 hours.

148. During this time Defendant Sudul entered the shower area, and told the plaintiff that Mr Salmoran "Had It comming", but tha the plaintiff would still receive a diciplinary report.

149. These "Old School" actions and attatudes were constantly, and prominantly displayed the entire time the plaintiff spent in the Special Housing Unit at USP Canaan.

150. The plaintiff was eventually placed back into the same cell without being fed lunch as punishment.

151. The plaintiffs personal property and legal paperwork arrived from USP Allenwood on or about 6-15-11.

152. Plaintiff retrieved his Judgement and Commitment paperwork

, and sent it to the recreation cage area with a Mexican gang member known to him as "Leprachaun". The plaintiff was trying to quell the "child molester" rumor started by Defendants Jenkens and Schwartz.

153. ▬▬▬▬▬ e plaintiff went to the recreation cage area.

154. Defendant Schwartz was making the cage assignments, and he had the plaintiff placed in a cage with 2 white inmates that the plaintiff had never been put in with before.

155 The plaintiff shook hands with one of the inmates, and when the plaintiff looked away the inmate struck the plaintiff on the side of his head knocking the plaintiff to the ground.

156. ▬▬▬▬▬▬▬▬▬▬▬ punc ▬▬▬▬ the plaintiff in the face an ▬▬▬▬▬▬▬

157. Defendant Schwartz and other officers were yelling "Stop" and "Lay on the ground".

This lasted for approximately 4 or 5 minutes.

158. One of the officers finally shot one of the 2 attacking inmates with the "pepper-ball" gun (paint ball marker loaded with irritant), and the 2 inmates finally went to the back of the cage.

159. One of the 2 inmates then yelled at Defendant Schwartz "Why do you keep trying me by putting "Cho-Moes" (child molesters) in my cage?!?" implying that he and Defendant Schwartz were conversant on the subject.

160. The inmate then looked at the plaintiff and called him a rapeist.

161. When the plaintiff was removed from the cage he was pat-searched by Defendant Jenkens


162. Wh~~il~~ ~~ ~~ ~~ searching the~~ pla~~ ~~ ~~ legs Defendant Jenkens pro~~ ~~ ~~ ~~ opened piece of

163. T~~he~~ ~~piece~~ of plastic
~~was not the plaintiffs.~~

164. Defendant Lieutenant (1) questioned the plaintiff while he was being medically assessed at the prison Hospital. The Defendant asked plaintiff what had happened.

165. The plaintiff told Defendant Lieutenant (1) that Defendant Schwartz had told those 2 inmates, that attacked him, that the plaintiff was a child molester then put him (plaintiff) in the recreation cage with them.

166. Defendant Lieutenant (1) became visably angry and told the plaintiff "That dosent happen here".

167. Defendant Lieutenant (2) then showed up to photograph the plaintiffs grossly swollen face, and asked Defendant Lieutenant (1) what had happened.

168. Defendant Lieutenant (1) reiterated what the plaintiff

told him in paragraph 165 of this filing.

169. The plaintiff was then taken to Community Medical Center in Scranton, Pennsylvainia to treat lacerations, possible broken facial bones, and neck injuries.

170. On or about 8-11-11 Defendant Schwartz was escorting the plain-tiff to Receiving and Discharge, and he (Defendant Schwartz) acknowled-ged that there was a rumor about plaintiff as discussed in paragraphs: 105-113, 152, 159-160, 165, 168 herein. Defendant Schwartz said "Just for the record, I didn't say anything about you to the other inmates."

171. The plaintiff responded by reminding Defendant Schwartz that the rumor was started because of what Defendant Schwartz said when he was escorting plaintiff as discussed in paragraph: 49 herein.

172. Since being moved to USP Lewisburg on or about 8-11-11 the plaintiff has been subjected to ridicule and threats to his safety from other inmates due to the "child molester" rumor started and spread by Defendants Schwartz and Jenkens.

173. Inmates that had heard the rumor at USP Canaan and then were transfered to USP Lewisburg have carried the rumor about the plaintiff with them so that now the plaintiff is known as a "Child Molester" in USP Lewisburg also.

174. On or about 8-19-11 plaintiff had to force USP Lewisburg staff to change the plaintiffs cell-mate because a inmate from USP Canaan convinced said cell-mate that the plaintiff was a child molester.

175. "Child Molester" is a bad label to have in a prison setting, and typically inmates who have been so labeled are targets of assaults, rape, and/or murder. The Child

Molester label was placed on the plain-
tiff because he refused to be intim-
idated by Special Housing Unit staff,
and the plaintiff had the nerve to
write complaints about Defendant
Schwartz, et al., This label will follow
the plaintiff throughout his time in
the Federal Prison System. When ever
he is recognized by an inmate who was
at USP Canaan at the time the label
was put on the plaintiff, and/or when-
ever he is recognized by someone
whom the label on the plaintiff was
passed to second or third hand.

176. Because of the "Child Molester"
rumor/label being placed on the
plaintiff he is in constant jeopardy
of being assaulted by other inmates
who are aware of the rumor/label.

177. The plaintiff can not even
go to outside recreation for fear
of being assaulted as he was in
paragraphs 153-160 herein.

178. The plaintiff made Defendants
Bigart and Renda awaire of the

(37)

abuse in the USP Canaan Special
Housing Unit during the disciplinary
hearing of the plaintiffs assault.

179. Defendant Bigart chose not
to assist the plaintiff in any mean-
ingful way during the disciplinary
hearing, or further report the
abuse, and falsification of disciplinary
report/incident report paper work.

180. Defendant Renda took the
abuse even further by attempting to
justify, and cover up the assault on
the plaintiff, and falsified official
reports by the Defendants named
in paragraphs 29-59 of this filing.

181. Defendant Renda then used
the fictional incident report of
events in paragraphs 29-59 herein
to justify his report that was used
a direct cause of the plaintiff being
placed in a BOP "Special Management
Unit" where plaintiff is subjected to
harsh conditions, and is not afforded
the same degree of movement, and
access to programs, property,

(38)

communication, ect. that inmates in a normal BoP institution get.

182. Defendant Lynsey purposefully threw away a "Sensitive" filing, to the North east Regional Office, of events documented in paragraphs 153-163 herein. Defendant Lynseys actions were a attempt to cover up staff abuses at USP Canaan.

183. Defendants Warden and Captain were fully aware of the physical and psychological abuse being perpetrated by Special Housing Unit staff, and their lack of disciplin, and super- vision of Special Housing Unit staff directly led to the plaintiff being assaulted and psychologically abused in paragraphs 29-69, 75-87, 89-100, 104- 113, 115-148, and 153-162 herein. The psy- cological abuse continues to this day because the plaintiff never Knows when he is going to be attacked by other inmates due to the "Child molester" rumor.

184. Defendant Norwood was aware of the abuses being perpitrated at

USP Canaan, through the Administrative Remedy procedure, and his lack of proper and meaningful responce led to the plaintiff being terrorized, assaulted, and slandered by staff, and inmates alike.

185. Defendants Cain and Watts, through the Administrative Remedy process, were awaire of the abuses at USP Canaan, and due to their lack of meaningful intervention the plaintiff was terrorized, assaulted, and slandered by staff, and inmates alike.

E. Cause of Action

186. For his cause of action aghenst defendants, plaintiff, by this reference, incorperates each and every allegation and statement set forth in paragraphs 1-185 of this Civil Rights complaint as if they were set forth in each of the counts that follow.

# Count One

## Reckless Disreguard for Plaintiffs Safety

187. The conduct of Defendants Cain, Watts, Norwood, Warden, and Captain in their leadership, executive management, supervisory, and/or advisory positions in failing to meaningfully address the staff misconduct and unprofeshonalism at USP Canaan constitutes reckless disreguard for plaintiffs safety and resulted in plaintiff being slandered, terrorized, and assaulted with serious injury resulting, by both staff and inmates. This has also led to the plaintiffs future safety being put in jeopardy by staff misconduct. All in violation of plaintiffs constitutional and statutory rights, including but not limited to the 4th, 5th, and 8th Ammendments, and 18 U.S.C. 4042 (a).

188. The conduct of Defendants Bigart, Renda, Kaiser, Psychology Representitive, Escort guard (1), and Escort Guard (2) in failing to document and/or report the crimminal

misconduct of Special Housing Unit staff as reported to them by plaintiff constitutes reckless disreguard for plaintiffs safety and resulted in plaintiff being slandered, terrorized, and assaulted resulting in seriouse injury by inmates in the Special Housing Unit. Also this has resulted in the plaintiffs future safety being put in jeopardy through staff misconduct. All in violation of plaintiffs constitutional, and statutory rights, including, but not limited to the 4th, 5th, and 8th Ammendments, and 18 U.S.C. 4042 (a).

189. The conduct of Defendants Sudul, Schwartz, and Pelicano in failing/refusing to find another inmate to be housed with the plaintiff after the plaintiff, Mr. Burke, Mr. Salmoran, and Mr. Rodriguez all expressed their safety concerns with reguard to being housed with one another, resulted in the plaintiffs safety being put in direct and immediate danger. Purposefully ignoring BOP policy on conflict avoidance after plaintiff expressed his safety concern constitutes reckless disreguard for plaintiffs

Safety. All in violation of plaintiffs constitutional and statutory rights, including, but not limited to the 4th, 5th, and 8th Ammendments, and 18 USC. 4042(a).

190. The conduct of Defendants Dominick, Burns, Schwartz, Moran, Seana, and Burning by either assaulting and/or failing to prevent or halt the assault of plaintiff constitutes reckless Disreguard of the plaintiffs safety, and resulted in the plaintiff being terrorized, and seriously injured. All in violation of plaintiffs constitutional and statutory rights, including, but not limited to the 4th, 5th, and 8th Ammendments, and 18 USC 4042(a).

191. The conduct of Defendants Jenkens, and Schwartz in spreading a rumor about the plaintiff constitutes reckless disreguard for the plaintiffs safety and has resulted in the plaintiff being terrorized, assaulted, seriousely injured, and further slandered by inmates in the special Housing Unit at USP Canaan. Furthermore, the plaintiff

has now been put in jeopardy every where else he goes for the remainder of his 15 year 8 month sentence. All in violation of plaintiffs Constitutional and Statutory rights, including, but not limited to the 4th, 5th and 8th, Ammendments, and 18 U.S.C. 4042(a).

192. The conduct of Defendant Schwartz deliberatly placing the plaintiff in a recreation cage with two inmates known for violence, after telling them the plaintiff is a "Child Molester" Constitutes reckless disreguard for plaintiffs safety and resulted in the plaintiff being terrorized, assaulted, and seriously injured. All in violation of the plaintiffs Constitutional and Statutory rights, including, but not limited to the 4th 5th and 8th Ammendments, and 18 U.S.C. 4042(a).

193. The conduct of Defendant Lynsey by not forwarding the plaintiffs "Sensitive" Request for Administrative Remedy Constitutes reckless disreguard for the plaintiffs safety and resulted in the covering up of criminal staff misconduct, and

(44)

the plaintiff being denied any poss-
able relief or redress of his
grievances, All in violation of his
(plaintiffs) Constitutional and
Statutory rights, including, but not
limited to the 1st, 4th, 5th, and 8th
Ammendments, and 18 U.S.C. 4042(a).

## Count Two

## Deliberate Indifference

194. The conduct of Defendants
Cain, Norwood, Watts, Warden, and
Captain in their leadership, executive,
management, supervisory, and/or
advisory positions in failing to take
appropriate action to halt and/or
Dicapline the Special Housing Unit Staff
for their crimminaly inapropriate
and unprofeshonal misconduct Constit-
utes deliberate indifference to
plaintiffs safety and resulted in
plaintiff being terrorized, Slandered,
assaulted, and seriously injured by
both staff and inmates at USP
Canaan. Also the plaintiffs future
safety has been put in jeopardy. All
in violation of plaintiffs Constitutional,

and statutory rights, including, but not limited to the 4th, 5th, and 8th Ammendments, and 18 U.S.C. 4042(a).

195. The conduct of Defendants Bigart, Renda, Kaiser, Psychology Representitive, Escort guard (1), and Escort guard (2) in failing to document and/or report the crimminal misconduct of Special Housing Unit staff as reported to them by plaintiff constitutes deliberate indifference to plaintiffs safety and resulted in plaintiff being terrorized, assaulted, and seriously injured by inmates at USP Canaan as well as plaintiffs future safety being put in jeopardy. All in violation of plaintiffs Constitutional and statutory rights, including, but not limited to the 4th, 5th, and 8th Ammendments, and 18 U.S.C. 4042(a).

196. The conduct of Defendants Sudul, Schwartz, and Pelacano in failing/refusing to find another inmate to be housed with the plaintiff after the plaintiff and Mr. Burke, Mr. Salmoran, and Mr. Rodriguez all expressed their safety

(46)

concerns with reguard to being housed with one another resulted in the Plaintiffs safety being put in direct and immediate danger. Ignoring BoP Policy on conflict avoydance after plaintiff unequivocally expressed his safety concern constitutes deliberate indifference to plaintiffs safety. All in violation of plaintiffs constitutional and statutory rights, including, but not limited to the 4th, 5th, and 8th Ammendments, and 18 U.S.C. 4042(a).

197. The Conduct of Defendants Dominick, Burns, Schwartz, Moran, Segna, and Burning by either assaulting or failing to prevent and/or hault the assault of the plaintiff constitutes deliberate indifference for the plaintiffs safety and resulted in the plaintiff being terrorized, and seriously injured. All in violation of plaintiffs constitutional and statutory rights, including, but not limited to the 4th, 5th, and 8th Ammendments, and 18 U.S.C. 4042 (a).

198. The conduct of Defendants Jenkens and Schwartz in spreading and starting a rumor about the plaintiff constitutes deliberate indifference to the plaintiff's safety, and has resulted in the plaintiff being slandered, terrorized, assaulted, and seriously injured by inmates at USP Canaan. Also the plaintiffs future safety has been put in jeopardy every where else he goes for the remainder of his 15 year 8 month prison sentence. All in violation of plaintiffs Constitutional and statutory rights, including, but not limited to the 4th, 5th, and 8th Ammendments, and 18 U.S.C. 4042(a).

199. The conduct of Defendant Schwartz deliberatly placing the plaintiff in a recreation cage with 2 inmates known for violence, after telling them the plaintiff is a "Child Molester" Constitutes deliberate indifference for plaintiffs safety, and resulted in plaintiff being slandered, terrorized, assaulted, and seriously injured. All in violation of plaintiffs Constitutional and statutory rights, including, but

not limited to the 4th 5th and 8th
Ammendments, and 18 U.S.C. 4042 (a).

200. The conduct of Defendant
Lynsey by not mailing plaintiffs "sensitive"
Administrative Remedy filing constitutes
deliberate indifference for plaintiffs
safety, and resulted in the covering
up of criminal staff misconduct, And
the plaintiff being denied any poss-
ably relief or redress for harms already
suffered by the time the "sensitive"
Administrative Remedy was filed, and
from future harms that remain real
and imminant. All in violation of the
plaintiffs constitutional and stat-
utory rights, including, but not
limited to the 4th 5th 8th and 1st
Ammendments, and 18 U.S.C. 4042 (a).

<u>Count Three</u>

<u>Conspiracy</u>

201. The conduct of Defendants
Cain, Watts, Norwood, Warden, and
Captain in their leadership, executive,
management, supervisory, and/or advisory
positions in having conspired togeather

(49)

and with others the Defendants agreed and acted to unlawfully cover up and impede any investigation into the crimminally inappropriate misconduct of USP Canaan staff which constitutes conspiricy and resulted in the plaintiff being slandered, terrorized, assaulted, and seriously injured by staff and inmates at USP Canaan. Also the plaintiffs future saftey has been put in jeopardy. All in violation of plaintiffs Constitutional and statutory rights, including, but not limited to the 4th, 5th, and 8th Ammendments, and 18 U.S.C. 4042 (a).

202. The conduct of Defendants Bigart, Renda, kaiser, Psychology Representive, Escort Guard(1), Escort Guard(2), Burning, Sudul, Lieutenant(1), Lieutenant(2), Dominick, Burns, Schwartz, Moran, Lynsey, Seana, Jenkens, and Pelacano having conspired togeather and with others to unlawfully cover up and impede any investigation into the criminally inappropriate misconduct of themselfs and others through filing false reports and/or not filing reports at all. This constitutes conspiricy and resulted in

the plaintiff being slandered, terorized, assaulted, and seriously injured by staff and inmates at USP Canaan. Also the plaintiffs future safety has been put in jeopardy. All in violation of plaintiffs Constitutional and statutory rights, including, but not limited to the 4th, 5th, and 8th Ammendments, and 18 U.S.C. 4042 (a).

203. The Conduct of Defendants Burning, Dominick, Burns, Schwartz, Moran, and Seana having Conspired togeather and with others the Defendants agreed and acted to unlawfully assault and/or Cause the plaintiff to be assaulted, This Constitutes Conspiricy and as a result the plaintiff has suffered seriouse physical, and mental injuries. All this in violation of plaintiffs Constitutional and statutory rights, including, but not limited to the 4th, 5th, and 8th Ammendments, and 18 U.S.C. 4042 (a).

204. The Conduct of Defendants Jenkens and Schwartz having Conspired togeather and with others the Defendants agreed and acted to

(51)

unlawfully spread the rumor that the plaintiff was a "Child Molester". This constitutes conspiricy and resulted in the plaintiff being terrorized, assaulted, and seriously injured at USP Canaan by inmates. Also this has jeopardized the plaintiffs future safety whereever he goes for the rest of his prison sentence. All this in violation of the plaintiffs constitutional and statutory rights, including, but not limited to the 4th 5th, and 8th Ammendments, and 18 USC 4042 (a).

## Count Four

## Failure to Protect

205. The allegations set forth in paragraphs 187-204 are adopted for purposes of this paragraph as if restated herein in addition to the causes of action stated therein also constitutes failure to Protect in violation of plaintiffs Eighth Ammendment right resulting in serious physical, and psycological injury to plaintiff and his future safety being put in jeopardy.

## Count Five

### Failure to Train and/or Dicipline

206. The conduct of Defendants Cain, Watts, Norwood, Warden, and Captain in failing to train and/or dicipline USP Canaan staff with reguards to reporting abuse by staff, proper use of force, and conflict avoydance resulted in seriouse physical and psycological injury to plaintiff as well as the plaintiffs future safety being put in danger for the rest of his 15year 8 month prison sentence. All this in violation of, inter alia, the Eighth Ammendment and 18 USC 4042 (a).

## Count Six

### Obstruction of the Administrative Remedy Process

207. Every one of the plaintiffs causes of action listed here in was activly, and passivly obstructed during the Administrative Remedy Process from Start (BP-8) to finish (BP-11), All in violation of plaintiffs First Ammendment Rights.

## F. Jury Demand

208. Pursuant to Federal Rules of Civil Procedure 38 (a) and (b) plaintiff demands a jury trial.

## G. Relief

209. WHERE FORE, plaintiff respectfully seeks:

(a) Compensatory damages, jointly and severally amongst the Defendants, in the ammount of $2,500,000.⁰⁰ (two million five hundred thousand)

(b) Punitive damages, jointly and severally amongst Defendants Cain, Watts, Norwood, Warden, and Captain, in the ammount of $2,500,000⁰⁰ (two million five hundred thousand)

(c) Punitive damages, jointly and severally amongst Defendants Burning, Sudul, Lieutenant (1), Lieutenant (2), Lynsey, Bigart, Renda, Kaiser, Psycology Representitive,

Escort Officer (1), Escort Officer (2), Dominick, Burns, Schwartz, Moran, Seana, Jenkens, and Pelacano, in the ammount of $5,000,000.00 (five million).

(d) Fees, costs, pre-judgement intrest

(e) Grant injuntive relief in the form of ordering the Federal Bureau of Prisons to send plaintiff to a medium security institution for the remainder of his sentence to preserve his safety.

Dated: 2-29-2012

Respectfully Submitted,

Paul Peraza, pro se
Reg. No. 57128-097
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

(55)



YOU. THE LETTER HAS BEEN NEITHER OPENED
INSPECTED. IF THE WRITER RAISES A QUESTIC
PROBLEM OVER WHICH THIS FACILITY HAS J
FOR FURTHER INFORMATION OR CLARIFICATI
THE WRITER ENCLOSES CORRESPONDENCE
FORWARDING TO ANOTHER ADDRESSEE, PLE
THE ENCLOSURE TO THE ABOVE ADDRESS

DICTION, YOU MAY WISH TO RETURN THEM AT

Inmate Name: Paul Pierce
Register Number: 57183-057
United States Penitentiary
P.O. Box 1000
Lewisburg, PA 17837

RECEIVED
SCRANTON

MAR 0 6 2012

Y.E. D'ANDREA, CLERK

7010 2780 0002 1154 4651

Office of the Clerk
U.S. District Court
Middle District of Pennsylvania

235 North Washington Ave.

P.O. Box 1148

Scranton, PA. 18501-1148

Special Mail