```
             IN THE UNITED STATES DISTRICT COURT
                        FOR THE
               MIDDLE DISTRICT OF PENNSYLVANIA


PAUL PERAZA,                      :
                                  :
          Plaintiff               :
                                  :
     v.                           :    CIVIL NO. 3:CV-12-376
                                  :
THOMAS R. CAIN, ET AL.,           :    (Judge Conaboy)
                                  :
          Defendants              :
```
_____

## MEMORANDUM
## Background

Paul Peraza, an inmate presently confined at the United States Penitentiary, Lewisburg, Pennsylvania (USP-Lewisburg) initiated this pro se civil rights action. An Amended Complaint (Doc. 6) was previously filed. Plaintiff's action regards events which purportedly transpired during his prior confinement at the Canaan United States Penitentiary, Waymart, Pennsylvania (USP-Canaan).

Named as Defendants are Director Thomas Kane, National Appeals Administrator Harrell Watts, and Regional Director J.L. Norwood of the Federal Bureau of Prisons (BOP). Peraza is also proceeding against the following USP-Canaan officials: Warden Ronnie Holt; Captain Michael Breckon; Physician's Assistant (PA) Kenneth Kaiser; Lieutenant Jamie Burning; Lieutenant Brian Sudul; Unit Manager Kyle Lindsay; Case Manager Kylie Bigart; Disciplinary Hearing Officer (DHO) Marc Renda; as well as Correctional Officers

1

(CO) Jeremy Dominick, Ryan Burns, John Schwartz, Michael Moran, Jessie Seana, Shawn Jenks, and Joseph Pellicano.[1]  Several John Doe Defendants, who are described as being USP-Canaan prison staff members are also named.

Plaintiff initially alleges that while signed up for outdoor recreation his cellmate, Inmate Burke, informed prison staff that he could no longer live with Peraza.[2]  See Doc. 6, ¶ 28.  Five minutes later, Defendants Schwartz, Burning, Dominick, and Moran brought Burke back to the cell he shared with the Plaintiff.  Those officers then allegedly tried to coerce Plaintiff into fighting his cellmate.  When Peraza refused he was handcuffed and taken from the cell.  It is next asserted that Correctional Officer Schwartz verbally abused Plaintiff and identified him as being a child molester as the inmate was being removed from his cell to the prison's Special Housing Unit (SHU).[3]

Thereafter, the officers allegedly physically and excessively assaulted Peraza after escorting him from his cell to a security camera blind spot.  Plaintiff asserts that this attack included a sexual battery in that Schwartz ran his hand over the

---

1. Warden Holt and Captain Breckon are not identified by name in the Amended Complaint.  The names of those two officials were provided to the Court by Defendants' counsel.

2. It is noted that the Amended Complaint as it appears on the computerized docket includes several apparently redacted averments.  However, upon comparing the original document with the docketed version, it appears that certain averments have simply been highlighted.

3. Peraza acknowledges that he responded to those remarks with an obscenity.  See id. at ¶ 50.

inmate's buttocks. Plaintiff contends he was also subject to additional verbal abuse during the attack. As a result of the alleged unprovoked assault, Plaintiff states that he lost consciousness and suffered loss of vison in his left eye for approximately five (5) minutes; dizziness; nausea; a sprained left ankle; knee and wrist pain; and a forehead laceration that caused nerve damage.

Following the assault, Plaintiff was put in leg irons and placed in a nearby holding cell. Next, Peraza was taken to a medical examination room where his injuries were assessed by Defendant PA Kaiser.[4] See id. at ¶ 65. As a result of that assessment, Plaintiff was moved to the prison's Medical Department for x-rays and treatment of his forehead laceration and then later transported to an outside hospital for further treatment of his head wound and closer examination of his ankle and wrists. See id. at ¶ 70. It is alleged that Kaiser refused to report the incident telling Peraza that the prisoner should himself report the incident to the Captain.

The Amended Complaint next asserts that on or about May 12, 2011, Plaintiff discovered that his SHU cellmate, Inmate Rodriguez, had been classified as being a protective custody inmate. In light of that development the prisoners agreed that they should no longer be housed together. However, Defendants Pelicano and Sudul denied their mutual request for a cell change. The Plaintiff then struck

---

4. In response to a question, Kaiser allegedly told Plaintiff that the inmate would have to be the one to report the incident.

Rodriguez on the side of the head in order to have that prisoner moved from the cell. See id. at ¶ 83.

On or about May 17, 2011, Plaintiff states that he was handcuffed and brought to the Lieutenants' office in order to be seen by a member of the prison's Psychology staff with respect to a sexual assault claim which the inmate filed against Officer Schwartz. Defendants Schwartz and Burning were initially present during this meeting.  However, Schwartz was later directed to leave the room.  The psychology staff member told Plaintiff that allegations of sexual abuse by staff should be reported to Special Investigative Services (SIS).  Plaintiff indicates that an internal complaint he subsequently submitted to SIS via Case Manager Smith allegedly went unanswered.

During the week of May 23, 2011, Plaintiff and his new cellmate Inmate Anderson were put in an outdoor recreation cage. According to the Amended Complaint, a Mexican gang member in an adjoining cage had a private conversation with Anderson and also told Plaintiff that Defendants Schwartz and Jenks were telling prisoners that Peraza was a child molester.  On or about June 7, 2011, Defendant Scwartz assigned Inmate Salmoran to be Peraza's new cellmate after Salmoran had been in a fight with his former cellmate.  See id. at ¶ 115.  When Plaintiff discovered that Salmoran was a protective custody inmate, the prisoners agreed to request a cell change.  However, Defendant Schwartz refused Salmoran's request to be moved.

Plaintiff indicates that in order to obtain the cell change he physically assaulted Inmate Salmoran. See id. at ¶¶ 127-132. During a resulting medical assessment, Kaiser allegedly told Plaintiff SHU officers were forcing inmates to fight one another like gladiators. See id. at ¶ 143. Peraza was than left in the handicapped shower area for two hours with his hands handcuffed behind his back. It is also alleged that PA Kaiser refused to report this incident.

It is next alleged that Schwartz deliberately placed two inmates in a recreation cage with Plaintiff for the purpose of having those prisoners attack Peraza. The two inmates proceeded to assault Plaintiff based upon their belief that he was a child molester.[5] As a result of this assault, Plaintiff suffered lacerations and bruising to the face and neck which required treatment at an outside hospital. The Amended Complaint adds that the assaults and the false labeling of him as being a child molester has been covered up by prison staff.

Peraza concludes that he was subjected to excessive use of force, he was improperly labeled as being a child molester in an effort to place him at risk of assault by other prisoners, there was interference with his attempts to obtain administrative relief, and that multiple members of the correctional staff including Defendants Bigart, Renda, and Lindsay were aware of those actions and failed to take appropriate action. Moreover, those officials

---

5.  The Amended Complaint also alleges that Defendant Jenks planted and then confiscated a homemade weapon from Peraza during a pat down search following the incident. See id. at ¶¶ 162-63.

also tried to cover up the alleged abuse.  For instance, it is asserted that Case Manager Bigart failed to report the abuse; Unit Manager Lindsay threw away a sensitive grievance which Plaintiff attempted to file with the BOP's Regional Office (See id. at ¶ 182); and DHO Renda falsified reports and used a fictionalized incident report to have Plaintiff placed in the SHU (See id. at ¶¶ 180-181).  The Amended Complaint also asserts that many of the above actions were the result of a widespread conspiracy and were also taken in retaliation for his initiation of administrative grievances.  Plaintiff seeks compensatory and punitive damages as well as injunctive relief, namely, a transfer to a medium security correctional facility.

Presently pending is Defendants' motion seeking partial dismissal of the Amended Complaint.  See Doc. 137.  The opposed motion is ripe for consideration.

## Discussion

Defendants seek entry of partial dismissal on the grounds that: (1) there are no allegations of personal involvement by Defendants Cain, Watts, Norwood, Holt, and Breckon; (2) the claims of staff interference with administrative remedies lacks merit; (3) Counts Two and Four of the Amended Complaint fail to state separate and distinct claims; (4) a viable claim of conspiracy is not stated; and (5) the Amended Complaint does not set forth an actionable assertion of retaliation.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the

6

dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Id. at 556.  A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Iqbal, 556 U.S. at 678.  Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief.  See id. at 678-79.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555.  The reviewing court must determine whether the

7

complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

Pro se parties are not, however, free to ignore the Federal Rules of Civil Procedure. As pointed out by the Defendants, Federal Rule of Civil Procedure 8 requires that a complaint contain a short and plain statement setting forth (1) the grounds upon which the court's jurisdiction rests, (2) the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief sought by the pleader.

Although there is not a heightened pleading standard in civil rights cases, a § 1983 complaint in order to comply with Rule 8, must contain at least a modicum of factual specificity, identifying the particular conduct of each defendant that is alleged to have harmed the plaintiff, so that the court can determine that the complaint is not frivolous and a defendant has adequate notice to frame an answer.[6] A civil rights complaint

---

6.   The United States Supreme Court in Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 167 (1993), held that it was improper to apply heightened pleading standards to § 1983 actions. The Court noted that a § 1983 complaint need only to comply "with
(continued...)

complies with this requirement if it alleges the conduct violating plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials.

**Personal Involvement**

Defendants' initial argument contends that the claims against Director Kane, National Appeals Administrator Watts, and Regional Director Norwood of the BOP as well as those against Warden Holt and Captain Breckon of USP-Canaan are improperly premised on a theory of respondeat superior and those officials are not alleged to have had any personal involvement in the alleged constitutional misconduct. See Doc. 142, p. 7.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which

---

6. (...continued)
the liberal system of 'notice pleading' set up by the Federal Rules." Id.

9

underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, any attempt by Plaintiff to establish liability against a defendant solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

The Defendants named in this matter include three supervisory BOP officials, Director Kane, National Appeals

10

Administrator Watts, and Regional Director Norwood. There are no discernible claims in the Amended Complaint that any of those individuals were involved in the day to day operations at USP-Canaan. Moreover, the Amended Complaint does not seek relief based upon a challenge to the legality of any BOP policy, custom, or practice.

Furthermore, it is apparent that Peraza is attempting to establish liability against those three Defendants based upon either their respective supervisory capacities at the BOP or because of their review of his institutional grievances. Pursuant to the above discussion, either approach is insufficient for establishing civil rights liability against those Defendants. Accordingly, the request for dismissal will be granted in favor of Defendants Kane, Watts, and Norwood.

Similarly, with respect to Warden Holt and Captain Breckon of USP-Canaan, there are no factual assertions set forth in the Amended Complaint showing that either of those supervisory officials were involved in the day to day operations of the SHU or that Peraza's constitutional rights were violated due to any policy, custom, or practice created or enforced by those officials. There are also no factual contentions showing that either Holt or Breckon ordered, authorized, knew of, or acquiesced in any of the alleged unconstitutional mistreatment.

Once again, it is apparent to this Court that Peraza is attempting to establish liability against those persons based upon either their respective supervisory capacities within USP-Canaan or

11

due to their review of the Plaintiff's institutional grievances. Dismissal will also be granted in favor of Warden Holt and Captain Breckon pursuant to the standards announced in Rode and Jones.

**Handling of Grievances**

The Amended Complaint alleges that Plaintiff submitted a sensitive grievance regarding his mistreatment in the SHU to Unit Manager Lindsay. It is alleged that Lindsay did not process or forward that grievance.[7] Defendants' second argument for dismissal contends that the alleged failure of Lindsay to submit a grievance is subject to dismissal because, "there is no due process right to a prison grievance procedure." Doc. 142, p. 12. Plaintiff contends that a viable claim has been stated because no meaningful investigation was conducted.[8]

As previously discussed, it is well settled that inmates do not enjoy a constitutional right to a prison grievance system. Accordingly, under the standards developed in Jones and Alexander this Court agrees that any attempt by Plaintiff to establish a claim against Lindsey based upon the purported failure to properly process his administrative grievance is subject to dismissal. The claim that Lindsey failed to protect Plaintiff from a known safety risk will proceed.

---

7. The Amended complaint also contends that USP-Canaan Case Manager Smith similarly discarded a grievance which Plaintiff attempted to file. However, Smith has not been named as a defendant.

8. Peraza does acknowledge the BOP did conduct an internal investigation into his allegations. See Doc. 143, p. 12.

12

**Counts Two and Four**

The next argument for dismissal asserts that because Counts Two and Four "are subsumed and cumulative to Counts One and Three" they should be stricken and dismissed. Doc. 142, p. 13. Defendants' argument is not addressed by Plaintiff's opposing brief.

This Court's review of the Amended Complaint shows that Counts One (Reckless Disregard) and Two (Deliberate Indifference) are similar and even identical at times. Likewise, Count Four (Failure to Protect) incorporates by reference Counts One through Three (Conspiracy) and includes no additional allegations.

Although liberal treatment is afforded to pro se litigants, since the Plaintiff's pending claims of excessive force, conspiracy, retaliation, and failure to protect are adequately set forth in Counts One and Three, this Court agrees that dismissal of the redundant Counts Two and Four is appropriate.

**Conspiracy**

Count Three of the Amended Complaint raises two claims of conspiracy. First it is alleged that all of the Defendants, including the upper echelon BOP officials named as Defendants, conspired to cover up the illegal actions taken against the Plaintiff by the USP-Canann SHU staff. Second, it is asserted that the SHU officials conspired to have Plaintiff falsely labeled as being a child molester in order to subject him to physical abuse at the hands of other inmates. Defendants' pending motion for partial

13

dismissal maintains that the Amended Complaint does not set forth a viable conspiracy claim.  See Doc. 142, p. 14.

In an opposing brief, Plaintiff states that Defendants Schwartz, Burning , Dominick, and Moran conspired with his then cellmate Inmate Burke to put the Plaintiff's safety in danger.  See Doc 143, p. 5. Peraza also asserts that it is obvious that those same correctional officers conspired to assault the Plaintiff.  See id. at p. 6.  Thereafter, Peraza generally maintains that all the Defendants conspired to cover up the improper conduct.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations.  D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992), cert. denied, 506 U.S. 1079 (1993); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989).  The Third Circuit Court of Appeals has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations."  Rose, 871 F.2d at 366.  Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."  Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals.  See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545.  Consequently, a plaintiff must allege with particularity and present material facts which show that the

purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right.  Id.; Rose, 871 F.2d at 366; Young, 926 F.2d at 1405 n.16; Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982).  Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity.  Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985).  A plaintiff cannot rely on subjective suspicions and unsupported speculation.  Young v. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

There are no averments of fact in the Amended Complaint that reasonably suggest the presence of an agreement or concerted activity between any of the Defendants.  The mere fact that more than one individual was involved in the purported constitutional wrongdoing does not by itself support a conspiracy claim.  Peraza has simply not alleged any facts showing any communication or cooperation among any Defendants from which an agreement could be inferred.  While Plaintiff has arguably set forth some claims of constitutional misconduct, he has not adequately alleged that those actions were the result of a conspiracy.  Dismissal will be granted with respect to the factually undeveloped, speculative claims of conspiracy.

**Retaliation**

Defendants' final argument asserts that Plaintiff's claim that Schwartz and Jenks retaliated against him for filing a

15

grievance by spreading false rumors that the inmate was a child molester is insufficient because there are no facts asserted to show that those rumors were spread to prevent him from filing further complaints. See Doc. 142, p. 17. Furthermore, they argue that there is no demonstration by Peraza as to how that alleged abuse deterred him from exercising his First Amendment rights.

Peraza's opposing brief contends that after he filed two administrative grievances, Defendants Schwartz and Sudul retaliated against him by assigning him a cellmate Inmate Salmoran "they knew the Plaintiff would fight with." Doc. 143, p. 9. Plaintiff adds that the incident where two prisoners were purportedly placed in the same recreation cage in order to assault him was also retaliatory. The opposing brief also indicates that Schwartz and Jenks falsely spread a rumor among the inmate population that Peraza was a child molester as retaliation for the Plaintiff's initiation of a sexual assault complaint against Schwartz.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228,

16

235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.[9]  See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).

Once Plaintiff has made a prima facie case, the burden shifts to the Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest."  Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned.  Rauser, 241 F.3d at 334.

The Amended Complaint clearly alleges that Plaintiff filed a grievance accusing multiple officers of physically assaulting him and Schwartz of sexual assault.  Thereafter, Plaintiff asserts that as a result of making that filing there were several retaliatory

---

9.   Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation.  Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

17

actions undertaken against him by the Defendants. The submission of grievances is a constitutionally protected conduct. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Thus, Defendants do not dispute and this Court will accept that the first prong of Rauser, i.e., that the Plaintiff be engaged in a constitutionally protected activity, has been satisfied.

The second prong of Rauser adverse action requires that Peraza allege that he suffered adverse action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. The Amended Complaint clearly alleges that Plaintiff was subjected to multiple acts of retaliation, not all of which are addressed by Defendants' pending motion to dismiss. Moreover, the pro se Plaintiff's opposing brief asserts that the alleged acts of retaliation "led" him "discontinue his pursuit of grievances" because he feared for his safety. Doc. 143, p. 10. Plaintiff has also alleged that his pursuit of grievances was a substantial or motivating factor behind the alleged abuse by correctional staff as required under Rauser.

Pursuant to the above discussion, this Court is satisfied, at this juncture in the proceedings, that Peraza has adequately set forth claims of retaliation sufficient to withstand scrutiny under Rule 12(b)(6). Accordingly, the multiple claims of retaliation will be permitted to proceed.

**John/Jane Does**

The Amended Complaint also names multiple John/Jane Doe

Defendants, whose identifies have still not been provided to the Court.

John/Jane Doe defendants may only be allowed "to stand in for the alleged real parties until discovery permits the intended defendants to be installed." Johnson v. City of Erie, 834 F. Supp. 873, 878 (W.D. Pa. 1993) (citations omitted).  Absent compelling reasons, a district court may dismiss such defendants if a plaintiff, after being granted a reasonable period of discovery, fails to identify them.  Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed, if discovery yields no identities.").

Based on this court's review of the record, although this action was initiated in June 2012 and the Amended Complaint was filed approximately one (1) year ago, Plaintiff has not yet provided this court with the identities of the John/Jane Doe defendants.  Accordingly, those unnamed Defendants shall be dismissed from this action under the authority of Scheetz if they are not identified within sixty (60) days of the date of this Memorandum and Order.  An appropriate Order will enter.


                              S/Richard P. Conaboy_____
                              RICHARD P. CONABOY
                              United States District Judge


DATED: SEPTEMBER 17, 2014

19